Lisa P. Page, Presiding Judge
Michael A. White ("White") appeals the trial court's judgment entered following a bench trial convicting him of one count of third-degree domestic assault pursuant to Section 565.074 RSMo (2016). We affirm.
BACKGROUND
Quaya White ("Mother") and White had two children together. On March 11, 2016 Mother and White were married, but separated, when Mother dropped the children at White's house for the evening so she could go to work. She picked the children up around 10 p.m., after her first shift, and brought the children to her parents' house so she could work a second shift. Mother picked the children up the next day around 7 or 8 a.m. When she bathed M.W. she noticed bruises on M.W.'s bottom and a cut on M.W.'s lower back. The injuries were not there when Mother dropped the children off at White's residence the prior day.
*53 Mother called White and asked him if anything happened while M.W. was with him, and White said "absolutely nothing had happened." Mother ultimately went to the authorities because she became suspicious about how M.W. was injured. M.W. was examined by a nurse practitioner. Following an investigation, White was ultimately charged with domestic assault in the third degree. The cause was tried to the court. White was convicted of domestic assault in the third degree and sentenced to ninety days, with the execution of his sentence suspended. He was placed on probation. The present appeal follows.
DISCUSSION
White's two points on appeal both assert allegations of plain error related to the trial court's admission of evidence because White did not object to the testimony at trial. In point one he claims the court plainly erred in allowing improper testimony concerning his character at trial. In point two he contends the court plainly erred in allowing evidence of specific instances of White's inappropriate conduct as a parent because it constituted improper evidence of prior bad acts.
Standard of Review
During trial, the State questioned Mother; Wendi McLeary, White's sister; and Angela Faulkner, with whom White lived at the time of the alleged incident. The State elicited testimony from the witnesses about White's parenting, as well as the fact White had anger issues due to post traumatic stress disorder ("PTSD") from serving in the Army. White did not object to the questioning; therefore, we review only for plain error. See Missouri Supreme Court Rule 30.20. Plain error should be used sparingly. State v. Mayes , 63 S.W.3d 615, 633 (Mo. banc 2001) (internal citations omitted). It does not justify review of every error not properly preserved. Id. Instead, we review for plain error to determine only whether manifest injustice or a miscarriage of justice would result if the error is left uncorrected. State v. Chism , 252 S.W.3d 178, 183 (Mo. App. W.D. 2008). "Plain error is that which is evident, obvious, and affects substantial rights of the defendant." Id.
Parties challenging evidentiary rulings, under plain error review, must demonstrate the trial court committed an error which was (1) "evident, obvious and clear" and (2) that such error resulted in prejudice to the party, i.e. the "claimed error did in fact cause manifest injustice or a miscarriage of justice." State v. Howery , 427 S.W.3d 236, 248 (Mo. App. E.D. 2014) (internal citation omitted).
Analysis
Point I-Character Evidence
In his first point on appeal, White claims the court plainly erred in allowing testimony concerning his skills as a parent, his anger issues, and his PTSD because he did not place his character at issue. White argues he was prejudiced by the admission of such evidence because the trial court relied on the evidence to convict him.
Under plain error review, even assuming, without deciding, the evidence was improperly admitted, we do not believe a manifest injustice or miscarriage of justice occurred from its admission. To find a manifest injustice, we must conclude the trial court's alleged error in admitting evidence was outcome determinative. Howery , 427 S.W.3d at 248. Outcome determinative prejudice occurs where the erroneously admitted evidence so influenced the trier of fact that when considered with and balanced against all properly admitted evidence, there is a reasonable probability the fact finder would have come to a different *54 result but for the erroneously admitted evidence. State v. Blakey , 203 S.W.3d 806, 814 (Mo. App. S.D. 2006) (citing State v. Black , 50 S.W.3d 778, 786 (Mo. banc 2001) ).
Here, there was evidence that M.W. did not have bruises on her bottom when Mother dropped her off at White's residence. Mother noticed the bruises the next day after M.W. returned home. Mother testified when she contacted White to ask about the bruises, he gave her numerous explanations as to how the injuries could have occurred. Each potential explanation related to incidents that occurred while M.W. was in White's care. She became suspicious because he began "changing his stories" about what happened to M.W. Lori Blankenship, the family nurse practitioner who examined M.W. after Mother discovered the bruises, also testified at trial. She opined that based on the location of the bruising and age of the child, the injuries did not appear accidental. In addition, Angela Faulkner, the owner of the residence where White was living at the time, testified she saw White spank M.W. on the date in question. White testified on his own behalf. Although he denied causing the bruises, he admitted he "swatted [M.W.'s] butt" on that day.
In light of the other evidence admitted at trial, and particularly because this was a bench trial, we do not believe the testimony concerning White's parenting and anger issues related to his PTSD was so prejudicial to be outcome determinative. In a judge-tried case, we presume the judge was not prejudiced by inadmissible evidence in reaching its judgment, unless the record clearly demonstrates the trial court relied upon such evidence. Blakey , 203 S.W.3d at 815. In its judgment in the present case, the trial court merely relied upon White's own acknowledgement of his anger issues and diagnosis of PTSD, in addition to other substantial evidence, in finding White guilty of third-degree domestic assault. The record does not demonstrate that the court improperly relied upon the testimony from the State's witnesses regarding White's parenting skills or his anger issues related to his PTSD.
As a result of the foregoing, we cannot conclude the trial court plainly erred in allowing the alleged character evidence at trial. Point one is denied.
Point II-Prior Bad Acts
In his second and final point on appeal, White claims the court plainly erred in admitting testimony concerning specific instances of his parenting because such evidence constituted prior bad acts. According to White, this improper propensity evidence was inadmissible and resulted in prejudice to him.
The State elicited testimony from Mother and other witnesses about separate instances of inappropriate discipline, and specifically, White's physical discipline of M.W. prior to the alleged incident in this case. Evidence of specific prior uncharged misconduct is inadmissible for the sole purpose of showing a defendant's propensity to commit such acts. State v. Lee , 528 S.W.3d 59, 65 (Mo. App. S.D. 2017) (quoting State v. Gilyard , 979 S.W.2d 138, 140 (Mo. banc 1998) ). However, in cases of assault, evidence of prior assault or abuse by the defendant of the victim is admissible as logically relevant to show motive, intent, or absence of mistake or accident. Id.
The testimony concerning White's prior disciple of M.W. was not introduced to prove he was the type of person who would have committed the crime of third-degree domestic assault. Instead, the record reflects the testimony in this regard could have been considered relevant and probative *55 once White placed the issue of whether the injury was accidental in question.
Mother testified she immediately contacted White once she noticed the bruises on M.W.'s bottom after M.W. had been at his residence. White claimed he did not know how M.W. got the bruises. According to Mother, he gave multiple explanations regarding potential accidental causes, all of which occurred while in his care. Mother testified White suggested M.W. could have been injured when she "bounced up and down on her bottom" or when she fell off a futon while at his house. White also suggested the injury could have been caused from M.W.'s potty chair. White made similar claims to Detective Amber Saupe, the officer investigating the allegation of abuse. When Detective Saupe interviewed White, he told her M.W. could have suffered the bruises when she "plopped down on the floor."
Based on his statements to Mother and Detective Saupe, White placed the question of whether the injuries to M.W. were accidental at issue during the trial. Therefore, testimony concerning his prior instances of discipline was relevant to rebut White's claims of accidental injury to M.W.
There is significant precedent in Missouri allowing evidence of prior misconduct by the defendant directed to the victim to be admitted in cases of assault. State v. Williams , 865 S.W.2d 794, 802 (Mo. App. S.D. 1993) (internal citations omitted). In particular, in cases of abuse of a child, evidence of prior mistreatment or discipline has been considered admissible to show the defendant's intent. See State v. Applegate , 668 S.W.2d 624, 631 (Mo. App. S.D. 1984) (evidence of prior abuse of child was relevant and admissible because it had a logical tendency to prove guilt); State v. Watson , 607 S.W.2d 189, 191 (Mo. App. W.D. 1980) (evidence of mistreatment of child was admissible to show defendant purposefully engaged in physical abuse of child in pattern of what she considered discipline); State v. Mattingly , 573 S.W.2d 372, 374 (Mo. App. 1978) (evidence of prior mistreatment of child may be considered in establishing required intent); State v. Thurman , 521 S.W.2d 773, 776-77 (Mo. App. 1975) (evidence of defendant's administering prior punishment on victim was admissible on issue of intent or absence of mistake or accident). Here, evidence concerning White's previous discipline of M.W. was relevant to rebut his claim of accidental injury.
Additionally, the rationale discussed in our review of White's first point on appeal is equally applicable to his argument concerning whether the admission of his prior bad acts resulted in prejudice against him. As discussed above, even if the testimony concerning his prior bad acts was improperly admitted, its admission did not cause manifest injustice or a miscarriage of justice.
Thus, the trial court did not plainly err in allowing evidence of specific instances of White's prior discipline of M.W. at trial and no prejudice resulted from it being admitted. Point two is denied.
CONCLUSION
The judgment of the trial court is affirmed.
Roy L. Richter, J. and Philip M. Hess, J., concur.